## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNIVERSAL INSURANCE
MANAGERS, INC.,
a Florida Corporation, and
UNIVERSAL INSURANCE
COMPANY OF NORTH AMERICA,
a Florida Corporation,

        Plaintiff,

                                    CASE NO.:  8:20-cv-01721

vs.

MARCIA LAMB,
an individual, and
CENTAURI SPECIALTY
INSURANCE HOLDINGS, INC.,
a Delaware Corporation.

        Defendants.
_____/

## PLAINTIFF'S VERIFIED COMPLAINT FOR
## INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

COME NOW, UNIVERSAL INSURANCE MANAGERS, INC. ("UIM") and UNIVERSAL INSURANCE COMPANY NORTH AMERICA ("Universal") (collectively, "Plaintiffs") and file this Verified Complaint for Injunctive and Other Relief against former UIM employee, MARCIA LAMB ("Lamb") and her new employer, CENTAURI SPECIALTY INSURANCE HOLDINGS, INC. ("Centauri") (Lamb and Centauri, together, the "Defendants"). The Verified Complaint includes claims for breach of contract for violations of Lamb's restrictive covenant agreement, violations of the Defend Trade Secrets Act of 2016, 18. U.S.C. § 1836; violations of the Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes, and tortious interference with contractual and business relationships.

Universal alleges as follows:

## JURISDICTION AND VENUE

1.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.     This Court has personal jurisdiction over Lamb because she is a citizen of the State of Florida.

3.     This Court has personal jurisdiction over Centauri because its principal place of business is in Sarasota, Florida.

4.     Venue is proper pursuant to 28 USC § 1391(b).

## PARTIES

5.     UIM is a Florida corporation with its principal place of business in Sarasota, Florida. Universal is a Florida corporation with its principal place of business in Sarasota, Florida.

6.     Marcia Lamb is an individual residing at 8980 Stone Harbour Loop, Bradenton, Florida 34212.

7.     Centauri is a Delaware Corporation with its principal place of business at 5391 Lakewood Ranch Blvd., Suite 303, Sarasota, Florida 34240.

## PLAINTIFFS' BUSINESS AND LEGITIMATE BUSINESS INTERESTS

8.     Plaintiffs are providers of property and casualty, policies in numerous states.

9.      Plaintiffs' business is highly competitive and, for this reason, Plaintiffs have spent substantial time, money and resources for the development of a market, the acquisition of equipment, and the preparation of training, sales programs and technical services, marketing plans, financing, product pricing, client lists and service arrangements, designed to enable Plaintiffs to maintain their competitive edge and excel in the industry.

10.     Plaintiffs made significant efforts to protect their legitimate business interests including, but not limited to, entering into restrictive covenant agreements that include confidentiality and non-solicitation provisions with certain high-level employees, including Lamb.

11.     Plaintiffs' confidential and proprietary information includes, but is not limited to, information related to marketing philosophy and objectives, competitive advantages and disadvantages, the types of services provided to insureds, financial results, response results, technological developments, names/addresses/phone numbers/account information of customers and prospective customers, computer magnetic tapes, technical and scientific information, management or marketing information and a variety of other proprietary information unique to the business.

12.     Plaintiffs' confidential information derives independent economic value from not being generally known to the public and not being readily ascertainable by proper means and have been subject to efforts that are reasonable under the circumstances to maintain their secrecy.

13.     The confidential and proprietary information described in the preceding paragraphs are Plaintiffs' trade secrets.

14.     Much of the economic benefit to Plaintiffs from the preceding stems from its confidential nature, because if the trade secrets were to become known to competitors, Plaintiffs would lose the competitive advantage afforded to them by this information.

15.     Plaintiffs expended substantial time, effort, money and resources in developing and maintaining their trade secrets.

16.     To maintain the confidential nature of their trade secrets, Plaintiffs take the following security measures: All employees sign a confidentiality agreement; all employees have ID badges to access physical buildings; all company computers and laptops require dual factor

authentication; all company cell phones require passwords; employees are reminded of confidentiality and trade secret obligations when leaving the company; all employees receive annual training on conflicts of interest and confidential information; department systems use firewalls and system security, for which employees received regular training; limited access to department system share drives; and continued enforcement of confidentiality agreements. Such measures are common and reasonable within the industry.

17.     Restrictive covenant agreements are negotiated with each employee. Each restrictive covenant is limited in scope to protect Plaintiffs' legitimate business interests, while preventing undue hardship on the employee in his or her pursuit of employment in his or her area of expertise.

18.     Plaintiffs' legitimate business interests include, but are not limited to, confidential and proprietary information; trade secrets; market share in the industry; relationships with customers, prospective customers, financial information, vendors, referral sources, and employees; and Plaintiffs' reputation and goodwill in the industry.

## **DEFENDANT LAMB**

19.     UIM hired Lamb on December 7, 2009.

20.     During Lamb's employment with Plaintiffs, she held several different positions, including Senior Accountant, Accounting Supervisor, and Financial Planning & Analysis Specialist.

21.     In September 2014, Lamb was promoted to Controller where she oversaw the Corporate Accounting Department.  This position gave Lamb special access to Plaintiffs' confidential information related to company finances, strategies and development, personnel information for department employees, and more.

22.     On April 16, 2020, the week before her resignation, Lamb signed an offer to promote her to Assistant Vice President – Accounting for Universal Insurance Managers, Inc.

## LAMB'S CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

23.     As a condition of employment and other good and valuable consideration, Lamb signed a Confidentiality and Non-Solicitation Agreement (the "Agreement") on December 7, 2009.  The Agreement is attached hereto as **Exhibit A.**

24.     The Agreement is governed by the laws of the Commonwealth of Puerto Rico.  ***Id.* at pp. 4-5**.

25.     The Agreement contained several restrictive covenants, including restrictions on the use and disclosure of confidential information and the solicitation of Plaintiffs' employees. ***Id.* at pp. 2-3**.

26.     In consideration for Lamb's employment and other good and valuable consideration, Lamb agreed that she shall:

First: **Confidentiality Agreement.**

(a)     Protect and preserve the confidential and proprietary nature of All Confidential Information;

(b)     Not disclose, give, sell or otherwise transfer or make available, directly or indirectly, and Confidential Information to any third party for any purpose;

(c)     Not use the Confidential Information, except as expressly provided in this Agreement;

(d)     Limit the dissemination of the Confidential Information within its own organization to individuals whose duties justify the need to know the Confidential Information, and only with a clear understanding by such individual of their obligation to maintain the confidential and proprietary nature of the Confidential Information and to restrict its use solely to the purpose specified herein;

(e)     Not make any records or copies of the Confidential Information, except as required by this Agreement, and return all Confidential Information and any copies thereof (in whatever form) immediately upon request.

(f)    Notify immediately of any loss or misplacement of records or copies of Confidential Information; and

(g)    Comply with any other security procedures reasonably established by "UICNA" with respect to the Confidential Information.

**Second: <u>Non-Solicitation</u>.**

For a period of twelve (12) months after the termination of the employment for any cause voluntary or involuntary the Employee shall not (directly or indirectly), offer, grant employment, or in any way induce to resign to any person who is an official, employee or officer of "UICNA".

*Id*. **at pp. 2-3**.

27.    Lamb agreed that the restrictions contained in the Agreement were reasonably necessary to protect Plaintiffs' legitimate business interests and that any violation of such restrictions would result in irreparable injury to Plaintiffs for which damages would not be an adequate remedy. *Id.* **at pp. 1, 3-4.**

28.    Lamb further agreed that if she violated any such restrictions, Plaintiffs would suffer irreparable damage, entitling Plaintiffs to injunctive relief or any other equitable remedy, as well as any other remedy or action for damages. *Id*.

29.    Finally, Lamb agreed that should Plaintiffs be forced to seek injunctive relief, Plaintiffs would be released from the obligation of posting bond. *Id*.

30.    Plaintiffs fully complied with all of their contractual obligations under the Agreement.

<u>**LAMB'S RESIGNATION AND NEW EMPLOYMENT WITH CENTAURI**</u>

31.    On April 21, 2020, Lamb submitted a letter of resignation to Plaintiffs.

32.    Lamb's last day of work was May 5, 2020.

33.    As part of Lamb's exit process, Plaintiffs provided Lamb with a copy of her Agreement and a reminder of her continuing obligations to the Company. *See* **Exhibit B**.

6

34.     Upon information and belief, shortly after her resignation, Lamb began working for Centauri as their Chief Financial Officer.

35.     Centauri is a property and casualty insurance company operating in Sarasota, Florida and selling insurance in nine states. Centauri is Plaintiffs' direct competitor.

## UNLAWFUL COMPETITION

36.     Within or about two months of Lamb's employment with Centauri, two of Plaintiffs' Finance Department employees, Anamary Gonzalez and Kelly Smith, resigned their employment to begin working for Centauri.

37.     Gonzalez and Smith indirectly reported to Lamb while working for Plaintiffs, and upon information and belief, were hired to work for Lamb at Centauri.

38.     While working for Plaintiffs, Lamb had access to confidential information regarding Gonzalez and Smith's training, experience and compensation. This information is Plaintiffs' trade secrets.

39.     As CFO, Lamb is an officer and agent of Centauri.

40.     Upon information and belief, Lamb misappropriated Plaintiffs' trade secrets to solicit Gonzalez and Smith to leave the employment of Plaintiffs and move to Centauri.

41.     Upon information and belief, Centauri had knowledge of Plaintiffs' restrictive covenant agreements with their employees, because the restrictive covenants at issue are customary in the industry. In fact, Centauri's current president, Rick Espino, previously served as president of Universal during the time Lamb and other key employees signed their own confidentiality and non-solicitation agreements. Espino signed a similar agreement tailored to his specific position with Universal.

42.     Centauri knew or should have known of Lamb's continuing obligations to Plaintiffs.

43.     Upon information and belief, Centauri used Plaintiffs' misappropriated trade secrets to solicit and hire Gonzalez and Smith.

44.     Upon information and belief, Centauri knowingly and intentionally encouraged and induced Lamb to violate her restrictive covenants in order to interfere with Plaintiffs' business and unlawfully compete in the marketplace.

45.     Upon information and belief, Lamb and Centauri's interference with Plaintiffs' business relationships with Gonzalez and Smith was intentional and without justification or privilege.

46.     On June 25, 2020, Plaintiffs sent a letter to Lamb, copied to Centauri, reminding Lamb of her contractual obligation to Plaintiffs and putting Lamb and Centauri on notice of the unlawful activities.  *See* **Exhibit C**.

47.     Upon information and belief, the Defendants' unlawful activities continued.

48.     Upon information and belief, Defendants have used and intend to continue using Plaintiffs' trade secrets to gain an unfair competitive advantage in the marketplace and for their own pecuniary interests.

49.     As a result of Lamb and Centauri's actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

50.     Plaintiffs have been required to retain the law firm of Ogletree Deakins to represent their interests in this action and are obligated to pay the firm a reasonable fee for its services.

**PLAINTIFFS' ENTITLEMENT TO INJUNCTIVE RELIEF**

51.    Plaintiffs have clearly ascertainable rights in need of protection, including the right to (a) preserve and maintain the integrity of their trade secrets and other confidential information and the goodwill and market share they worked hard to create, (b) prevent Lamb from continued breach of her Agreement with Plaintiffs, and (c) prevent Centauri and Lamb from engaging in unfair and unlawful competition through tortious interference with Plaintiffs' business relationships with their employees.

52.    Lamb's Agreement is a valid and enforceable contract that prohibits Lamb from engaging in unlawful solicitation of Plaintiffs' employees, as well as restricting the use and disclosure of confidential information.

53.    Plaintiffs have fully performed their obligations under the Agreement.

54.    Upon information and belief, Lamb materially breached her Agreement by using Plaintiffs' confidential information and trade secrets to unlawfully solicit Plaintiffs' employees within the restricted period.

55.    Upon information and belief, Centauri and Lamb have used Plaintiffs' confidential information and trade secrets to unlawfully compete in the market.

56.    Centauri and Lamb's actions were and are without justification or privilege.

57.    Upon information and belief, Centauri and Lamb's actions are ongoing and are likely to continue.

58.    Plaintiffs have an urgent need to protect their legitimate business interests.

59.    As a direct result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

60.     The violation of Lamb's enforceable restrictive covenants create a presumption of irreparable injury.

61.     There is no adequate remedy at law that might address the irreparable injury caused by Defendants' actions.   Absent relief, Plaintiffs will likely continue to lose employees to Centauri, directly or indirectly as a result of Defendants' actions.  There is no way to accurately forecast the effects on Plaintiffs' business over time, or the extent of the long-term damage due to Defendants' actions.

62.     If Defendants' actions are allowed to continue, Defendants will gain an unfair and unlawful competitive advantage and will cause substantial loss.

63.     Should Plaintiffs be required to wait until a full trial on the merits to enforce their legal rights, Plaintiffs will be irreparably harmed.

64.     Injunctive relief is not contrary to public health, safety or welfare.

65.     Plaintiffs have a substantial likelihood of success on the merits of their claims.

66.     The potential injury to Defendants should injunctive relief issue does not outweigh the ongoing injury to Plaintiffs should injunctive relief fail to issue.

67.     Issuing injunctive relief will serve the public interest.

68.     All conditions precedent to bringing this cause of action have occurred, been performed or have been waived.

## COUNT I – BREACH OF CONTRACT
### (Against Defendant Lamb)

69.     Plaintiffs re-allege and incorporate paragraphs 1-68, as if fully set forth herein.

70.     The Agreement is a valid and enforceable contract.

71.    The Agreement required Lamb to refrain from directly or indirectly offering, granting employment, or in any way inducing to resign to any person who is an official, employee or officer of Plaintiffs.

72.    The Agreement further prohibits Lamb's use and disclosure of Plaintiffs' confidential information and trade secrets.

73.    Plaintiffs have fully performed their obligations under the Agreement.

74.    Upon information and belief, Lamb knowingly, intentionally, and materially breached the terms of the Agreement by, among other things, using Plaintiffs' confidential information and trade secrets to solicit employees to leave Plaintiffs and join Centauri.

75.    Upon information and belief, Lamb's actions are ongoing.

76.    As a direct and proximate result of Lamb's breach of the Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Enter a temporary injunction prohibiting Lamb from continuing to breach the terms of her Agreement;

(b)    Enter a permanent injunction prohibiting Lamb from violating the terms of her Agreement;

(c)    Enter an order compelling Lamb to abide by the terms of her Agreement;

(d)    Enter judgment in favor of Plaintiffs and against Lamb;

(e)    Award Plaintiffs damages, including costs and attorneys' fees incurred in prosecuting this action;

(f)    Award Plaintiffs prejudgment interest; and

(g)    Grant such other and further relief as this Court deems just and proper.

## COUNT II– MISAPPROPRIATION OF TRADE SECRETS
**Defend Trade Secrets Act, 18. U.S.C. § 1836**
**(Against Both Defendants)**

77.     Plaintiffs re-allege and incorporate paragraphs 1-68, as if fully set forth herein.

78.     While working for Plaintiffs, Lamb had access to Plaintiffs' confidential information, including personnel information related to Plaintiffs' employees.

79.     Plaintiffs expended substantial time, effort, money and resources in developing and maintaining their confidential information.

80.     Plaintiffs take reasonable, affirmative measures to maintain the confidentiality of this information for their exclusive benefit and competitive advantage in the industry.

81.     This confidential information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

82.     This confidential information constitutes trade secrets subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §1832.

83.     Plaintiffs' trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

84.     By signing the Agreement, Lamb knew she had a duty to maintain the secrecy of Plaintiffs' trade secrets and to return those trade secrets in her possession upon the separation from the company.

85.     Lamb also had a duty to maintain the secrecy of Plaintiffs' trade secrets and to return those trade secrets in her possession upon the separation of her employment with Plaintiffs by virtue of the Defend Trade Secrets Act, 18. U.S.C. § 1836.

12

86.     Lamb had actual knowledge that the information she obtained during her employment with Plaintiffs was, as described above, Plaintiffs' trade secrets.

87.     Upon information and belief, Lamb, on behalf of herself and as an officer and agent of Centauri, wrongfully took and used Plaintiffs' trade secrets to advance her own pecuniary interests and those of Centauri, in violation of her restrictive covenants and Federal law.

88.     Upon information and belief, Centauri knew that the information provided by Lamb and used by Lamb on Centauri's behalf was protected trade secrets.

89.     The Defendants misappropriated Plaintiffs' trade secrets, or appropriated them without authorization, by taking and using them for purposes specifically prohibited by Lamb's Agreement.

90.     Defendants knew or should have known that they were prohibited from using Plaintiffs' trade secrets to solicit Plaintiffs' employees for their own pecuniary interests.

91.     Nonetheless, upon information and belief, Defendants are using Plaintiffs' misappropriated trade secrets to engage in unlawful competition.

92.     Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets are willful and malicious and for the purpose of gaining an unfair advantage in the industry.

93.     Upon information and belief, Defendants' unlawful actions are continuing.

94.     Unless Defendants are restrained and enjoined from using the subject trade secrets, Plaintiffs will suffer immediate and irreparable injury as Defendants will continue to have access and the ability to make use of Plaintiffs' trade secrets for financial gain.

95.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Enter a temporary injunction prohibiting Defendants from continued use and/or disclosure of Plaintiffs' trade secrets;

(b)    Enter a permanent injunction prohibiting Defendants' use and disclosure of Plaintiffs' trade secrets;

(c)    Enter judgment in favor of Plaintiffs and against Defendants;

(d)    Award Plaintiffs damages to include actual damages and unjust enrichment;

(e)    Award Plaintiffs their attorneys' fees and costs as permitted by the Defend Trade Secrets Act;

(f)    Award Plaintiffs exemplary damages as permitted by law;

(g)    Award Plaintiffs prejudgment interest; and

(h)    Grant such other and further relief as this Court deems just and proper.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS
### Florida Uniform Trade Secrets Act
### (Against Both Defendants)

96.    Plaintiffs re-allege and incorporate paragraphs 1-68, as if fully set forth herein.

97.    While working for Plaintiffs, Lamb had access to Plaintiffs' confidential information, including personnel information related to Plaintiffs' employees.

98.    Plaintiffs expended substantial time, effort, money and resources in developing and maintaining their confidential information.

99.    Plaintiffs take reasonable, affirmative measures to maintain the confidentiality of this information for their exclusive benefit and competitive advantage in the industry.

100.    This confidential information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper

means by, another person who can obtain economic value from the disclosure or use of the information.

101.   This confidential information constitute trade secrets subject to protection under the Florida Uniform Trade Secrets Act.

102.   By signing the Agreement, Lamb knew she had a duty to maintain the secrecy of Plaintiffs' trade secrets and to return those trade secrets in her possession upon the separation from the company.

103.   Lamb also had a duty to maintain the secrecy of Plaintiffs' trade secrets and to return those trade secrets in her possession upon the separation of her employment with Plaintiffs by virtue of the Florida Uniform Trade Secrets Act.

104.   Lamb had actual knowledge that the information she obtained during her employment with Plaintiffs was, as described above, Plaintiffs' trade secrets.

105.   Upon information and belief, Lamb, on behalf of herself and as an officer and agent of Centauri, wrongfully took and used Plaintiffs' trade secrets to advance her own pecuniary interests and those of Centauri, in violation of her restrictive covenants and Federal law.

106.   Upon information and belief, Centauri knew that the information provided by Lamb and used by Lamb on Centauri's behalf was protected trade secrets.

107.   The Defendants misappropriated Plaintiffs' trade secrets, or appropriated them without authorization, by taking and using them for purposes specifically prohibited by Lamb's Agreement.

108.   Defendants knew or should have known that they were prohibited from using Plaintiffs' trade secrets to solicit Plaintiffs' employees for their own pecuniary interests.

109.    Nonetheless, Defendants are using Plaintiffs' misappropriated trade secrets to engage in unlawful competition.

110.    Upon information and belief, Defendants' misappropriation of Plaintiffs' trade secrets are willful and malicious and for the purpose of gaining an unfair advantage in the industry.

111.    Upon information and belief, Defendants' unlawful actions are continuing.

112.    Unless Defendants are restrained and enjoined from using the subject trade secrets, Plaintiffs will suffer immediate and irreparable injury, as Defendants will continue to have access and the ability to make use of Plaintiffs' trade secrets for financial gain.

113.    As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Enter a temporary injunction prohibiting Defendants from continued use and/or disclosure of Plaintiffs' trade secrets;

(b)    Enter a permanent injunction prohibiting Defendants' use and disclosure of Plaintiffs' trade secrets;

(c)    Enter judgment in favor of Plaintiffs and against Defendants;

(d)    Award Plaintiffs damages to include actual damages and unjust enrichment;

(e)    Award Plaintiffs their attorneys' fees and costs as permitted by the Florida Uniform Trade Secrets Act;

(f)    Award Plaintiffs exemplary damages as permitted by law;

(g)    Award Plaintiffs prejudgment interest; and

## COUNT IV - TORTIOUS INTERFERENCE WITH UNIVERSAL'S CONTRACTS
### (Against Centauri)

114.    Plaintiffs re-allege and incorporate paragraphs 1-68, as if fully set forth herein.

115.    Plaintiffs have a valid and enforceable restrictive covenant agreement with Defendant Lamb.

116.    Plaintiffs have legitimate and protectable interests in their contractual relationships with their employees and former employees.

117.    Centauri knew or should have known that Plaintiffs have a valid and enforceable restrictive covenant agreement with Lamb, as well as other employees, which is typical for Universal during the time Lamb and other key employees signed their own confidentiality and non-solicitation agreements. Espino signed a similar agreement tailored to his specific position with Universal.

118.    Upon information and belief, Centauri intentionally encouraged and induced Lamb to violate her restrictive covenants to advance Centauri's pecuniary interests.

119.    Upon information and belief, Centauri's interference was without justification or privilege.

120.    Upon information and belief, Centauri's interference was intentional and malicious.

121.    Upon information and belief, Centauri's actions are ongoing.

122.    As a result of Centauri's tortious interference with Plaintiffs' contractual relationship with Lamb, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damage.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Enter a temporary injunction enjoining Centauri from interfering with Plaintiffs' contractual relationships with their employees and former

17

employees, including encouraging and inducing violations of restrictive covenants;

(b) Enter a permanent injunction enjoining Centauri from interfering with Plaintiffs' contractual relationships with their employees and former employees, including encouraging and inducing violations of restrictive covenants;

(c) Enter judgment in favor of Plaintiffs and against Centauri;

(d) Award Plaintiffs damages, including punitive damages;

(e) Award Plaintiffs prejudgment interest and costs; and

(f) Grant such other and further relief as this Court deems just and proper.

## COUNT V –TORTIOUS INTERFERENCE WITH UNIVERSAL'S ADVANTAGEOUS BUSINESS RELATIONSHIP WITH ITS EMPLOYEES
### (Against Both Defendants)

123. Plaintiffs re-allege and incorporate paragraphs 1-68, as if fully set forth herein.

124. Plaintiffs have advantageous business relationships with their employees.

125. Plaintiffs spend considerable time and effort recruiting, developing and maintaining talented employees.

126. Plaintiffs have a reasonable expectancy of maintaining these employee relationships.

127. Defendants knew or should have known that these employee relationships are critical to Plaintiffs' business.

128. Upon information and belief, Defendants intentionally and unjustifiably interfered with Plaintiffs' advantageous business relationships with their employees when it used Plaintiffs' trade secrets to solicit members of Lamb's former team.

129.    Upon information and belief, Defendants' actions are ongoing.

130.    As a result of Defendants' interference, Plaintiffs have suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Enter a temporary injunction enjoining Defendants from interfering with Plaintiffs' advantageous business relationships with their employees;

(b) Enter a permanent injunction enjoining Defendants from interfering with Plaintiffs; advantageous business relationships with their employees;

(c) Enter judgment in favor of Plaintiffs and against Defendants;

(d) Award Plaintiffs damages, including punitive damages;

(e) Award Plaintiffs prejudgment interest and costs; and

(f) Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## VERIFICATION OF COMPLAINT

I, *Osvaldo Miranda*, certify that I am the *VP of Finance* of Universal. I declare and affirm, under penalty of perjury, that I have read the foregoing Verified Complaint, and that the statements of fact of the foregoing Verified Complaint are true and correct, and that the basis of my knowledge, information and belief is my personal knowledge, information from the company's business records and employees, and information shared with me in the ordinary course of the company's business activities.

SWORN AND SUBSCRIBED before me, this 24th day of July ,
2020

NOTARY PUBLIC

My Commission Expires: October 30, 2022

STELLA M. KILBOURNE
Commission # GG 261657
Expires October 30, 2022
Bonded Thru Troy Fain Insurance 800-385-7019

20

Dated:   July 24, 2020

Respectfully submitted,

*/s/Ignacio J. Garcia*
Ignacio J. Garcia
Florida Bar No. 423440
Eliza N. Horne
Florida Bar No. 1018588
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, FL 33602
Telephone: (813) 289-1247
Facsimile:  (813) 289-6530
Email : iggy.garcia@ogletree.com
Email : eliza.horne@ogletree.com

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of July, I filed the foregoing with the United States District Court, Middle District of Florida, Tampa Division, via the CM/ECF System, and that a true and correct copy of the foregoing and all attachments will be served upon all Defendants via Process Server.

*/s/Ignacio J. Garcia*
Attorney

43640784.1